STATE OF HAWAII, Plaintiff-Appellee, *v.* GLENN RUSHING, Defendant-Appellant

NO. 6562

JUNE 3, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
RETIRED JUSTICES MARUMOTO AND KOBAYASHI,
ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* This is an appeal by the defendant Glenn Rushing who was convicted and sentenced for welfare fraud

under the provisions of HRS § 346-34. HRS § 346-34 provides that:

> Any person who, by means of a wilfully false statement or representation, or by impersonation or other fraudulent device, obtains or attempts to obtain, or aids or abets any other person to obtain public assistance to which he is not justly entitled, or a larger amount of assistance than that to which he is justly entitled; or any recipient who buys or disposes of real property or any person who knowingly aids or abets a recipient in the purchase or sale of real property without the consent of the department of social services and housing shall be guilty of fraud.

> *If, at any time while the recipient of public assistance is receiving such assistance, his living requirements are reduced and he fails to report the reduction within thirty days from the date of the reduction to the department, or he acquires from any source real property, funds, income, or other resources and fails to report the amount of same together with the source of the resources to the department within thirty days of receipt of same, or prior to spending or otherwise disposing of all or any portion of the same, he shall be deemed guilty of fraud. . . .*

> No person shall knowingly obtain or attempt to obtain, or aid or abet another person in obtaining or attempting to obtain, any food commodity under a food distribution program or any food stamp or coupon under a food stamp plan, to which he or the other person is not entitled to receive or use under any law, or under any rule or regulation promulgated pursuant to section 346-14(9) or chapter 91. (Emphasis added.)

The defendant was charged under the second paragraph of the statute.

The relevant facts are as follows:

On July 23, 1975, the defendant and his wife, Violet, filled out and signed an "Eligibility Review" form in order to obtain continuing assistance under the Aid of Families with Dependent Children ("AFDC") program. The defendant was listed as a member of a family of nine, which

included his wife and seven children. He signed as the spouse, and his address was the same as his wife's, who signed as the applicant. On the page above their signatures, the Rushings were informed of their responsibility to report if a member of the family obtained employment or if the family began to receive additional income.

The Rushing family received public assistance from the Department of Social Services and Housing ("DSSH") during the months of July through October, 1975. The checks were issued to his wife as payee.

In August, 1975, the defendant began working at Holsum Bakery. He received wages in the months of August, September, October, and December, 1975.

At trial, Katherine Fukuhara, a DSSH caseworker, testified that the defendant's wife reported to her on October 7, 1975, that the defendant had started working on October 4, 1975. On November 7, 1975, defendant's wife further reported that her husband had been injured and had stayed home for two weeks.

Fukuhara also testified that on or about November 11, 1975, she received a form from the DSSH's Working Incentive Office ("WIN") stating that the defendant had been placed by WIN in the Holsum job and inquiring as to the reduction in defendant's public assistance due to employment. According to Fukuhara, the form indicated that the defendant had begun employment in August. Fukuhara called Holsum Bakery on November 11, 1975, and was informed that the defendant had begun working for Holsum on August 7, 1975.

Fukuhara arranged to meet with the defendant's wife on November 17, 1975. At that meeting Violet Rushing admitted that her husband had actually started work in August but claimed that she thought the WIN office would report it to Fukuhara. According to Fukuhara, Violet Rushing stated that she had contacted her former caseworker, a Ms. Kusaka, to report her husband's employment, and that she had further left a message with Ruth Ann Gomes, the receptionist in Fukuhara's office. Fukuhara checked with Kusaka and Gomes and con-

cluded that the only time the department was informed of the defendant's employment was when, on October 7, 1975, the defendant's wife reported to Fukuhara that the defendant had started working on October 4, 1975.

On the evidence, the district court found the defendant guilty as charged.

The defendant first argues that because HRS § 346-34 provides that a recipient who fails to report income from outside sources "shall be deemed guilty of fraud," a statutory presumption of intent has thereby been created in violation of the Due Process Clause of the Fourteenth Amendment. *See Tot v. United States,* 319 U.S. 463 (1942); *State v. Dwyer,* 57 Haw. 526, 560 P.2d 110 (1977). We find defendant's argument ill-premised.

HRS § 702-212(2) permits a penal statute to dispense with a state of mind requirement only "insofar as a legislative purpose to impose absolute liability for such offense or with respect to any element thereof *plainly* appears." (Emphasis added). Otherwise, intent must be proved and "is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." HRS § 702-204.

We do not find the legislative purpose to impose absolute liability plainly to appear from the wording of HRS § 346-34. Moreover, the mere absence of a specification of the requisite state of mind does not provide a sufficient basis from which to override the general policy of the Hawaii Penal Code that absolute or strict liability in the penal law is indefensible if conviction results in the possibility of imprisonment and condemnation. *See* Commentary to HRS § 702-212. That the legislative purpose to impose absolute liability should not be discerned lightly by the courts seems very clear. American Law Institute, Model Penal Code, Tentative Draft No. 4, comments at 145 (1955), quoted in Commentary to HRS § 702-212. We thus find that the offense of fraud under the second paragraph of HRS § 346-34 is established if, with respect to the failure to report income within thirty days of its receipt, a recipient acts intentionally, knowingly, or recklessly.

The defendant argues, however, that even in the event that HRS § 346-34 does not unconstitutionally presume intent, the record herein does not provide sufficient evidence from which the requisite intent may be inferred. Accordingly, he claims that the trial court erred in denying his motion to acquit. We disagree. To warrant the denial of a motion to acquit there must be sufficient evidence to support a prima facie case, *i.e.*, the evidence must be such as would enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt. *State v. Laurie*, 56 Haw. 664, 548 P.2d 271 (1976).

Here, it is true that no direct evidence of intent was introduced by the prosecution; such evidence, however, is not required of the State to prove its case. *State v. Stuart*, 51 Haw. 656, 657, 466 P.2d 444, 445 (1970). It is an elementary principle of law that intent may be proved by circumstantial evidence. The element of intent can rarely be shown by direct evidence, and it may be shown by reasonable inference arising from the circumstances surrounding the act. *State v. Hernandez*, 61 Haw. 475, 479, 605 P.2d 75, 78 (1980); *State v. Hopkins*, 60 Haw. 683, 687, 592 P.2d 810, 812 (1979); *State v. Yabusaki*, 58 Haw. 404, 409, 570 P.2d 844, 847 (1977); *State v. Laurie, supra* at 670, 548 P.2d at 276. The mind of an alleged offender may be read from his acts and conduct and from inferences fairly drawn from all the circumstances. *State v. Yabusaki, supra*.

In the present case, it is undisputed that the defendant, along with his wife, signed an AFDC Eligibility Review form which listed as a responsibility of the recipient the duty to report to DSSH if a member of the family obtained employment or began receiving additional income. At trial, prosecution witness Fukuhara testified that DSSH was not notified that the defendant had been employed at Holsum Bakery from August 7, 1975 to October 4, 1975, prior to receiving an indication of that fact through the department's WIN office. Under these circumstances, we find that the trial court had sufficient evidence of the defendant's state of mind to deny his motion to acquit.

The defendant further argues, however, that there is insufficient evidence that he was an actual recipient of benefits

to support a prima facie case under HRS § 346-34. It is apparently his contention that the prosecution must provide direct proof that the defendant "lived in the same house as the designated payee [his spouse], and so received the benefit of the rent paid," or that he "ate his meals with the designated payee, thus receiving the benefit of the food bought with the welfare money and the utilities employed in the preparation of the meal." Defendant's argument merits little discussion.

HRS § 346-1 defines "recipient" as "the person for whose use and benefit services are rendered or a grant of public assistance is made." The defendant was included by DSSH as one of nine resident family members in the computation of the Rushing's monthly assistance check, consistent with statements made on an AFDC Eligibility Review form which defendant signed. The trial court thus had a sufficient basis on which to find that the State's grant of public assistance had been made for defendant's use and benefit.

Affirmed.

*Wayne D. Parsons* and *Chester M. Kanai,* Deputy Public Defenders on the briefs for defendant-appellant.

*Steven E. Thomas* and *Michael A. Lilly,* Deputies Attorney General on the brief for plaintiff-appellee.